M. Steven Wang  SBN 191168
City Attorney
Sari Myers Dierking SBN 226805
Asst. City Attorney
**City Attorney's Office**
**CITY OF FOLSOM**
50 Natoma Street
Folsom, CA 95630
TEL: 916.461.6025; FAX: 916.351.0536

**P O R T E R | S C O T T**

A PROFESSIONAL CORPORATION
John R. Whitefleet, SBN 213301
2180 Harvard Street, 500
Sacramento, California 95815
jwhitefleet@porterscott.com
TEL: (916) 929-1481, FAX: (916) 927-3706

Attorneys for Defendants CITY OF FOLSOM, JOSEPH HOWARD, BRIAN LOCKHART, ROMAN KEHM, ZACHARY WELLS, JOHN WAGNER, BRANDON MONSOOR, PAUL RICE, DEREK KOUPAL, MICHAEL AUSTIN, JOSHUA SENA, EATHAN VAVACK, JOHN MONIZ

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE P. UMBERGER II, LISABETH A. KING, SAVANNAH R. BAILEY,<br><br>                    Plaintiffs,<br><br>v.<br><br>CITY OF FOLSOM, DETECTIVE JOSEPH HOWARD, COMMANDER BRIAN LOCKHART, SERGEANT ROMAN KEHM, SERGEANT ZACHARY WELLS, SERGEANT JOHN WAGNER, SERGEANT BRANDON MONSOOR, SERGEANT PAUL RICE, CORPORAL DEREK KOUPAL, OFFICER MICHAEL AUSTIN, OFFICER JOSHUA SENA, OFFICER EATHAN VAVACK, AND OFFICER JOHN MONIZ,<br><br>                    Defendants.<br>_____/ | CASE NO. 2:24-cv-010169-KJM-JDP<br><br>**DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Date: October 9th, 2025**<br>**Time: 10:00 AM**<br>**Courtroom: 9, 13th Floor (via Zoom)**<br><br>Complaint Filed: 04/22/2024 |

/ / /

1    Defendants CITY OF FOLSOM, JOSEPH HOWARD, BRIAN LOCKHART, ROMAN

2  KEHM, ZACHARY WELLS, JOHN WAGNER, BRANDON MONSOOR, PAUL RICE, DEREK

3  KOUPAL, MICHAEL AUSTIN, JOSHUA SENA, EATHAN VAVACK, JOHN MONIZ move to

4  dismiss the Complaint of Plaintiffs and submit the following Memorandum of Points and

5  Authorities in support.

6              I.    **INTRODUCTION**

7    This case arises from the execution of a search warrant at the residence of Plaintiffs and

8  business of Plaintiff Umberger.   Plaintiffs challenge the warrant, and alleges the warrant was

9  executed using unnecessary force and prolonged handcuffing against thirteen defendants.  By this

10  motion, Defendants submit the allegations fall far short of required claims against each individual

11  and/or the entity.

12            II.    **ALLEGATIONS AND CLAIMS IN COMPLAINT**

13    Plaintiffs acknowledge a search warrant was obtained to search his home by Defendant

14  Detective Joseph Howard for evidence (computers and electronic storage devices) of violation of

15  California Penal Code section 632.  (¶s 9, 25, 44, Complaint).   Plaintiff alleges the warrant was

16  invalid for omissions that:

> 1. The ownership of the device was already established.
> 2. Defendant Howard was informed of evidence showing Plaintiff Umberger had the consent of all parties, disproving allegations of eavesdropping.
> 3. A judicial officer and two Folsom PD officers were informed that Plaintiff Umberger did not own or possess any firearms prior to the execution of the search warrant.
> 4. Neither affidavits suggested that Plaintiff Umberger could own or possess a firearm.
> 5. Plaintiff Umberger has no prior felonies.
> 6. Plaintiff Umberger had lived in Folsom his entire life, where he raised his two sons, and for the last 24 years has been a local business owner and homeowner.
> 7. Plaintiff Umberger has assisted the local policing agencies, several times, with cases involving stolen goods. He is not a violent criminal.

25  (¶ 79, Complaint).   Plaintiff also alleges "Defendant Howard misled the Magistrate when he stated

26  the purpose of the search warrant was for a violent crime, and/or to search for firearms and/or

27  controlled substances" (¶76, Complaint), presumably based on the statement in the warrant that

28  Plaintiff alleges is false:

**DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

4889-8627-6541, v. 1

"Due to the increased threat of violence involving firearms and other deadly weapons whenever officers enter a structure for the purpose of executing a search warrant to search for firearms, controlled substances, weapons, the fruits and instrumentalities of a violent crime, or to execute an arrest warrant on an individual wanted for a violent crime."

(¶ 43, Complaint).

On the morning of July 13, 2023, (7 am) a SWAT team from the City of Folsom consisting of defendants Kehm, Wells, Rice, Koupal, Monsoor, Austin, Sena, and Moniz, approached the residence and performed a knock and announce. (¶ 26, Complaint). Plaintiffs allege that "less than one minute" later, a battering ram forced the door open. (Id). Plaintiffs King and Umberger allege Defendants Kehm, Wells, and Austin had weapons pointed at them. (¶27, Complaint) Plaintiff Umberger alleges Defendant Austin:

aggressively grabbed him by his wrists, pulled him down the breezeway where Defendant Austin then slammed his face against the wall, rammed his shoulder into his back, and his knee into his thigh, then utilizing a type of rear twist-lock control hold, he twisted his left arm outside the normal range of motion to put the handcuff on, and did the same with his right arm, then yanked on the handcuffs.

(¶ 31, complaint). Plaintiff Bailey alleges Defendant Wells pointed a weapon at her. (¶ 34, Complaint).

Plaintiff Umberger alleges that after defendants "could not find any evidence from the residence", his business was searched. (¶s 36, 38, Complaint). Plaintiffs allege that the City of Folsom has a custom and practice of unnecessary SWAT deployment Due to Folsom by "labeling non-violent offences as "high risk" to boost the SW AT teams deployment numbers. This practice has normalized the use of their SWAT team to perform routine warrant work." (¶ 42, complaint) Plaintiffs allege there is a custom and practice of retaining officers with a propensity for violence. (¶s 57-59, Complaint).

Plaintiffs appear to acknowledge a subsequent warrant on July 18, 2023 for access to the seized devices. (¶47, complaint). Plaintiff alleges that Defendant Howard was already aware that Plaintiff King was the owner of the recording device and there were texts "showing Plaintiff Umberger had consent from his ex-wife to record their interaction", attaching Exhibit C to the Complaint, screenshots of texts.

**DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

4889-8627-6541, v. 1

1  Based thereon, Plaintiffs allege violations of the Fourth Amendment arising from the search

2  warrants, manner of entry, use of force in pointing weapons during the execution of the warrant, use

3  of force during detention, handcuffing during detention, failure to intervene, and Monell type claims

4  against the City.

5  **III.    SEARCH WARRANTS AT ISSUE**

6  Plaintiffs attach a single page from both warrants, omitting the context in which the language

7  used arises in both.   However, the July 11, 2023 warrant is summarized as follows:

8  On June 7, 2023, Folsom Police Officer Stokhaug responded to 1205 Souza Way in Folsom

9  for a suspicious circumstance report by Jennifer Umberger, who found a recording device on her

10  side yard that morning, which she believed was placed there by her ex-husband, George Umberger,

11  because he was somehow aware of conversations he otherwise would not have been privy to,

12  including her own attorney in relation to a divorce proceeding.  (See p. 8-9 of 15, Search Warrant

13  and Affidavit dated July 11, 2023, Exhibit A to Request for Judicial Notice "RJN").  On June 12,

14  2023, Jennifer Umberger provided Officer Stokhaug with video showing George Umberger on

15  Jennifer Umberger's property, searching in the area where the recording device had been located.

16  (See p. 10 of 15, Exhibit A to RJN). On June 21, 2023, a search warrant was obtained to analyze the

17  recording device, which had 40 files that included Jennifer Umberger's voice. (See p. 11 of 15,

18  Exhibit A to RJN).  Detective Howard opined George Umberger was in violation of Penal Code

19  section 632 (a felony) (see p. 1 of 15, RJN), and requested authorization to search both his residence

20  and business for computer/computer systems and any device containing electronically stored data.

21  (See pp. 12- 15, Exhibit A to RJN).

22  As part of the warrant, Detective Howard requested authorization to use drone

23  reconnaissance technology.  (See pp. 12-14 of 15, Exhibit A to RJN).  This was granted; as was the

24  use of force to breach to gain entry.  (p.4 of 14, Exhibit A to RJN)

25  The return on the warrant resulted in the seizure of 9 items, drives, SD cards, and computers,

26  as acknowledged by Sacramento Superior Court Judge Sharon Lueras.  (Ex. B to RJN)

27  Based on the seized items, Detective Howard obtained a further search warrant on July 18,

28  2023 to search the seized drives, SD cards, and computers. (Ex. C to RJN).   Part of the reason for

4

**DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

the warrant was for:

"All indicia of ownership and control for both the data and the digital device, such as device identification and settings data, address book/contacts, social network posts/updates/tags, Wi-Fi network tables, associated wireless devices (such as known Wi-Fi networks and Bluetooth devices), associated connected devices (such as for backup and syncing), stored passwords, user dictionaries" (p.4, Ex C to RJN).   As "[t]his may tend to establish **further evidence of ownership of digital device(s) listed in this warrant and will provide evidence of Umberger's involvement in the above described offenses."**   (pp. 13-14, Ex C to RJN) (emphasis in original).

## III.  <u>LEGAL STANDARD</u>

Complaints must contain a "short and plain statement" providing "enough facts to state a claim for relief that is plausible on its face" to survive a motion to dismiss under F.R.C.P., Rule 12(b)(6).  *Bell Atlantic v. Twombly*, 550 U.S. 544, 591 (2007).  Satisfying that obligation requires more than a recitation of the elements of the claim.  *Id.*  The statement must include enough <u>facts</u>, taken as true, to suggest a right to relief.  *Id.*  The statement must "raise that right to relief above a speculative level." *Id.* at 1966.  In general, factual allegations in a complaint must be taken as true. *Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  However, mere "conclusory allegations of law and unwarranted inferences" do not.  *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Fair notice requires the pleading of facts that creates a plausible right to relief. See *Iqbal*, 556 U.S. at 678 (stating that a plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'") (quoting *Twombly*, 550 U.S. at 555); see also *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (explaining that the Supreme Court's decisions in *Twombly* and *Iqbal* represent a departure from the well-established tradition of notice pleading in the federal courts).

/ / /

/ / /

/ / /

**DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

4889-8627-6541, v. 1

# IV. <u>ARGUMENT</u>

**A.     <u>Plaintiffs' judicial deception claim fails</u>**

In his first claim, Plaintiff asserts violation of the Fourth Amendment arising from the two warrants.   Defendants submit this claim fails.

"To successfully allege a violation of the constitutional right to be free from judicial deception, the [plaintiffs] must make out a claim that includes (1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1146–47 (9th Cir. 2021); *see also Franks v. Delaware*, 438 U.S. 154, 171–72 (1978) ("[T]hose allegations must be accompanied by an offer of proof."). "To determine the materiality of omitted facts, [courts] consider whether the affidavit, once corrected and supplemented, establishes probable cause." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1084 (9th Cir. 2011) (internal quotation marks omitted). A claim for judicial deception must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) because the claim is one "involving fraud." *Benavidez*, 993 F.3d at 1148.

The Ninth Circuit has repeatedly emphasized that the Fourth Amendment does not require inclusion of all exculpatory evidence.  See *Beltran v. Santa Clara County*, 389 Fed.Appx. 679, 681 (9th Cir. 2010), and has upheld a warrant in the face of omitted evidence that contradicted statements in the warrant application.  "An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1124 (9th Cir. 1997) quoting *US v. Colkley*, 899 F. 2d 297, 300 (4th Cir. 1990)(finding no obligation to disclose an inconsistency in the timing of a witness' statement).  See also *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir.1987) ("[t]he mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit."), and *Ewing v. City of Stockton,* 588 F. 3d 1218 (9th Cir. 2009) (omission of a non-identification by another witness "does not cast doubt on probable cause" when one witness did identify plaintiffs)

In addition, ambiguous statements in a warrant do not, as a matter of law, amount to a false statement or a misrepresentation.  *Millender v. Cnty. of Los Angeles*, No. CV 05-2298 DDP RZX, 2007 WL 7589200, at *15 (C.D. Cal. Mar. 15, 2007), aff'd, 620 F.3d 1016 (9th Cir. 2010), rev'd sub

**DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

4889-8627-6541, v. 1

1   nom. *Messerschmidt v. Millender*, 565 U.S. 535, 132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012), and rev'd
2   in part, 472 F. App'x 627 (9th Cir. 2012).

3       "The omission of facts rises to the level of misrepresentation only if the omitted facts cast
4   doubt on the existence of probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1226 (9th
5   Cir.2009) Likewise, a claim of judicial deception may not be based on statements resulting from
6   negligence or good faith mistakes, "[n]or may a claim of judicial deception be based on an officer's
7   erroneous assumptions about the evidence he has received. *Id*. at 1224.  An alleged failure to point
8   out inconsistencies to the court does not amount to "deliberate falsity or reckless disregard of the
9   truth of the statements in the affidavit." See *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995).

10      Review by the court of a warrant is differential, upholding it if the issuing judge "had a
11  `substantial basis' for concluding [that] probable cause existed based on the totality of
12  circumstances." *Greenstreet v. County of San Bernardino*, 41 F.3d 1306, 1309 (9th Cir.1994)
13  (quoting *United States v. Bertrand*, 926 F.2d 838 (9th Cir.1991)).  See also *United States v. Alaimalo*,
14  313 F.3d 1188, 1193 (9th Cir.2002) ("Probable cause requires only a fair probability or substantial
15  chance" of the suspected activity). Thus, a judge's "determination that an affidavit provided
16  probable cause to issue a search warrant will be upheld unless clearly erroneous." *United States v.*
17  *Alvarez*, 358 F.3d 1194, 1203 (9th Cir.2004).

18      The court must determine the materiality of the allegedly false statements or omissions. *KRL*
19  *v. Moore*, 384 F. 3d 1105, 1117 (9th Cir. 2004); see also *Butler v. Elle*, 281 F. 3d 1014, 1024 (9th
20  Cir. 2002) ("Materiality is for the court, state of mind is for the jury."). If an official submitted false
21  statements, the court purges those statements and determines whether what is left justifies issuance
22  of the warrant. See, e.g., *Baldwin v. Placer County*, 418 F.3d 966, 971 (9th Cir.2005). If the official
23  omitted facts required to prevent technically true statements in the affidavit from being misleading,
24  the court determines whether the affidavit, once corrected and supplemented, establishes probable
25  cause. See, e.g., *Liston v. County of Riverside*, 120 F.3d 965, 973-74 (9th Cir.1997).

26      Here, Defendants first submit the claimed omissions or falsities are not material to the
27  findings of probable cause, such that the claims may be dismissed on those grounds.   Assuming
28  any materiality is found, Defendants submit the claimed falsities not only do not meet the heightened

7
**DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

4889-8627-6541, v. 1

pleading standard, nor are fully supported by evidence.

Specifically, Plaintiff complains that "Defendant Howard misled the Magistrate when he stated the purpose of the search warrant was for a violent crime, and/or to search for firearms and/or controlled substances" (¶76, Complaint), presumably based on the statement in the warrant that Plaintiff alleges is false:

> "Due to the increased threat of violence involving firearms and other deadly weapons whenever officers enter a structure for the purpose of executing a search warrant to search for firearms, controlled substances, weapons, the fruits and instrumentalities of a violent crime, or to execute an arrest warrant on an individual wanted for a violent crime."

(¶ 43, Complaint).   Defendants submit this allegation is based on a clear misreading of the warrant. The sentence actually reads (under the justification to use drones as surveillance to support the warrant):

> Based on my training and experience, as well as the training and experience of other experienced investigators with whom I have spoken, as well as my review of other crime reports, I am aware that there exists an increased threat of violence, often involving firearms and other deadly weapons whenever officers enter a structure for the purpose of executing a search warrant to search for firearms, controlled substances, weapons, the fruits and instrumentalities of a violent crime, and/or to execute an arrest warrant on an individual wanted for a violent crime.

This statement only a small part, based on a recitation of the affiant's experience, to support the request for use of drone.  In the context of the warrant, which clearly states it was for data for eavesdropping, there is no implication that this warrant was to search for firearms or fruits of a violent crime, merely because the affiant used that particular experience to get authorization for the use of drones in executing the warrant.  Thus, Plaintiff's allegations are not material, do not effect the probable cause for seeking the warrant – which was the underlying report of Jennifer Umberger and the result of another warrant finding surreptitious audio recordings.  Otherwise, there are no allegations drones were actually used.

/ / /

/ / /

/ / /

/ / /

**DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

4889-8627-6541, v. 1

Plaintiff also argues that the warrant was false because:

1. The ownership of the device was already established.
2. Defendant Howard was informed of evidence showing Plaintiff Umberger had the consent of all parties, disproving allegations of eavesdropping.
3. A judicial officer and two Folsom PD officers were informed that Plaintiff Umberger did not own or possess any firearms prior to the execution of the search warrant.
4. Neither affidavits suggested that Plaintiff Umberger could own or possess a firearm.
5. Plaintiff Umberger has no prior felonies.
6. Plaintiff Umberger had lived in Folsom his entire life, where he raised his two sons, and for the last 24 years has been a local business owner and homeowner.
7. Plaintiff Umberger has assisted the local policing agencies, several times, with cases involving stolen goods. He is not a violent criminal.

(¶ 79, Complaint).    Defendants submit that grounds 3-7 are wholly immaterial to the finding of probable cause for computers and electronic data.  That Plaintiff alleges that he did not possess/own firearms was not raised as a basis for probable cause in seeking the warrant.  Even so, Plaintiff fails to submit any evidence (such as the TRO documents) to prove he did not own or possess weapons. In terms of the allegation that Defendant Howard was informed he "had consent of all parties" that would somehow vitiate the eavesdropping, Plaintiff submits unauthenticated screenshots of text messages from a "Gina", which not only appears to be hearsay, but also fails to support any proposition that he had permission to plant a recording device on the property of Jennifer Umberger. Equally important, there is no evidence that Defendant Howard was aware of any such consent. Thus, the allegation falls short of amounting to a falsity/omission to invalidate probable cause.

Next, Plaintiff alleges seeking information about ownership was false because Plaintiff King claimed ownership of the device.  Insofar as Plaintiff does not delineate between the first and second warrants, Defendants submit thorough review of the first warrant makes no mention of ownership. Moreover, the excerpt Plaintiff attaches as Exhibit B to the Complaint which speaks to ownership is from the July 18, 2023.   In that regard, the "ownership" issue of the devices seized (drives, SD cards, and computers), all from Plaintiff Umberger's business, were not established.  Otherwise, it is commonplace for search warrants to authorize the seizure of items that can help identify persons in control of the premises or items to be seized. See *Ewing v. City of Stockton,* 588 F.3d 1218, 1229 (9th Cir.2009). Accordingly, it was not "false" to seek such information, and of course, such had no

**DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

4889-8627-6541, v. 1

bearing on the probable cause of the warrant, nor the entry in the residence.

Therefore, the first claim for relief should be dismissed.

Insofar as Plaintiff names Defendant Wagner in this claim, there are no allegations that the search warrant were at his direction, only that he "approved them". (See ¶ 81, Complaint). A government official is liable under § 1983 only for his or her own misconduct. *Iqbal,* 556 U.S. at 676. A plaintiff therefore must plead facts that establish that each "defendant, through [his] own individual actions, has violated the Constitution." *Id*. at 676. The Ninth Circuit has "rejected the 'team effort' standard [that] allows the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct." *Hopkins v. Bonvicnio*, 573 F.3d 752, 769-70 (9th Cir. 2009). Mere approval is not sufficient without allegations of knowledge by Defendant Wagner of some omission or misrepresentations in the warrants. Accordingly, Defendant Wagner should be dismissed.

**B.    Plaintiffs' claim for forced entry fails**

Plaintiff asserts violation of the Fourth Amendment arising from the use of the battering ram by Defendant Koupal to make forced entry into the residence in his second claim for relief, although Plaintiff also names the City, Lockhart and Howard.

In determining whether the execution of a search warrant meets the Fourth Amendment's reasonableness standard, the Supreme Court has "consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); see also *United States v. Banks*, 540 U.S. 31, 35–36, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003) (waiting 15-20 to use battering ram reasonable).

Here, Plaintiff admits Defendants knocked and announced their presence and then waited before using the ram. *Wilson v. Ark*., 514 U.S. 927, 934 (1995) (officers must be either refused entry into a residence or until exigent circumstances arise). Exigent circumstances include the risk that evidence of a crime will be destroyed while officers wait. See *Banks*, 540 U.S. at 38; See also e.g. *United States v. DeLutis*, 722 F.2d 902, 909 (1st Cir.1983) ("[G]enerally, a wait of 20 seconds is deemed adequate before the officers may force entry.").

/ / /

---

**DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

4889-8627-6541, v. 1

Here, Plaintiffs admit to acknowledging hearing the officers but then implicitly refused entry either by announcing the need to get dressed or failing to open the door "in under a minute" before the ram was used. Having acknowledged the officers' presence, it takes little to no time to destroy electronic data -either by the push of a button on a keyboard, or physically breaking a USB stick or crushing a drive so they are not usable. Thus, sufficient exigency existed as a matter of law in waiting "under a minute" to use the ram under these circumstances, pursuant to the above authorities. Therefore, the second claim for relief should be dismissed.

Insofar as Plaintiff names Defendant Howard in this claim, there are no allegations that the use of the battering ram was at his direction. (See ¶ 87, Complaint). A government official is liable under § 1983 only for his or her own misconduct. *Iqbal,* 556 U.S. at 676. Accordingly, Defendant Howard should be dismissed from this claim.

**C.** **Any claim arising from detention itself fails**

Although not clear, Plaintiffs appear to assert that the detention during the execution of the warrant amounts to a Fourth Amendment violation. (¶ 2; p. 21, 6-9, Complaint; Third claim);

In *Michigan v. Summers*, 452 U.S. 692 (1981), the court held that officers executing a search warrant have the authority "to detain the occupants of the premises while a proper search is conducted." *Id.*, at 705. Such detentions are appropriate because the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial. Id., at 701-705. "An officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.' " Muehler v. Mena, 544 U.S. 93, 98, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005) That Plaintiffs challenge the warrant is immaterial. "[T]he law does not require police officers to second-guess a judicial determination that probable cause supports a search warrant." *Wigley v. City of Albuquerque*, 567 F. App'x 606, 610 (10th Cir. 2014); see also Messerschmidt v. Millender, 565 U.S. 535, 546, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012) ("Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner[.]"). Officers could rely reasonably on the validity of the search warrant to detain during eh

11

**DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

4889-8627-6541, v. 1

1  execution of same. *Wigley*. 567 F. App'x 606 (finding detention during execution of a search warrant

2  for the home of plaintiffs valid notwithstanding the plaintiffs' challenge of the warrant's validity).

3  Accordingly, any claim based on the detention itself fails and the motion should be granted.

4  **D.**    **Plaintiffs' Failure to intervene claim fails**

5        In the Sixth claim, Plaintiffs assert that Defendants Monsoor, Vavack, Rice and Moniz failed

6  to intervene.    (¶s 130-138).   Plaintiffs do not allege in what specifically these defendants were

7  supposed to intervene in.

8        Otherwise, on order to establish a failure to intervene, plaintiff must prove the officer was

9  aware of the constitutional violation and had a realistic opportunity to intercede. *Adams v. Kraft*,

10  No. 5:10-CV-00602-LHK, 2011 WL 3240598, at *21 (N.D. Cal. July 29, 2011) citing *Cunningham

11  v. Gates*, 229 F.3d 1271, 1289 (9th Cir.2000) ("officers can be held liable for failing to intercede

12  only if they had an opportunity to intercede"). Moreover, the inquiry is specific to the individual

13  defendant. See *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir.1996) (holding that an officer could

14  not be liable just because of his membership in a group committing an unlawful and excessive search

15  of a woman's home without a showing of individual participation in the unlawful conduct).

16        Here, it is not clear what acts Plaintiffs claim could have been intervened, much less to each

17  individual defendant.  Accordingly, the motion should be granted.

18  **E.**    **The fifth claim for Excessive Handcuffing against all defendants fails for lack of

19  specificity against each defendant.**

20        In his fifth claim arising from being handcuffed for "over two hours", Plaintiff Umberger

21  asserts this claim "against all defendants".    As noted above, the Ninth Circuit has "rejected the

22  'team effort' standard [that] allows the jury to lump all the defendants together, rather than require

23  it to base each individual's liability on his own conduct." *Hopkins*, supra, 573 F.3d 752, at 769-70.

24  Plaintiff must identify which defendant he claims are purportedly responsible for the two hour

25  handcuffing.

26  / / /

27  / / /

28  / / /

---

12

**DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**F.**     <u>**Official Capacity Suits are Redundant to the Claims Against the CITY**</u>

Plaintiffs names several individual defendants in their "official capacity": Defendant Lockhart (¶10, Complaint); Defendant Kehm (¶11, Complaint); Defendant Wells (¶12, Complaint); Defendant Wagner (¶13, Complaint); Defendant Monsoor (¶14, Complaint).

However, it is now well settled that a suit against individuals in their official capacities is a suit against the public entity and not the named defendant.  See *Kentucky, dba Bureau of State Police v. Graham*, 473 U.S. 159, 165-160 (1985)(the real party in interest in an official capacity suit is the government entity and not the named official); See also *Munoz v. Kolender*, 208 F.Supp. 2d 1125, 1151 (C.D. Cal. 2002).   Thus, in accordance with the above authorities, the official capacity claims are the equivalent of a suit against the CITY and the naming of them in their respective official capacities are redundant to claims against the City, who is also named.  Thus, all claims against Defendants Lockhart, Kehm, Wells, Wagner, and Monsoor in their official capacities should be dismissed without leave to amend.

**G.**     <u>**The first, second, third, fourth and fifth claims for relief fail to state sufficient facts of a Monell-type claim against the City.**</u>

Despite asserting express Monell type claims (seventh and eighth claims) Plaintiffs names the CITY in the first, second, third, fourth and fifth claims pursuant to 42 U.S.C section 1983. Defendants submit these claims all fail to state sufficient facts.

Municipalities cannot be held vicariously liable for the unconstitutional acts of their employees based solely on a *respondeat superior* theory. *Monell v. Dep't of Social Serv*., 436 U.S. 658, 691 (1978).  Thus, while not expressly stated as such in the first through fifth claims, these five claims appear to assert Monell-type liability against the CITY for Fourth Amendment violations. "In order to establish municipal liability, a plaintiff must show that a `policy or custom' led to the plaintiff's injury. The Court has further required that the plaintiff demonstrate that the policy or custom of a municipality `reflects deliberate indifference to the constitutional rights of its inhabitants.'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (quoting *Monell*, 436 U.S. 658; *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

/ / /

**DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

4889-8627-6541, v. 1

In addition, plaintiff must additionally show that there are policies, customs, or practice which amount to a deliberate indifference to his constitutional rights and that these policies are the moving force behind the constitutional violations. *Lee v. City of Los Angeles*, 250 F.3d 668, 681–82 (9th Cir. 2001). Random acts or isolated events do not satisfy the plaintiff's burden to establish a custom or policy. *Picray v. Sealock*, 138 F.3d 767, 772 (9th Cir. 1998) (finding that the plaintiff's own experience was insufficient to establish a custom or policy). Moreover, conclusory allegations are insufficient to survive dismissal. *Koch v. Sacramento County*, No. 2:23-CV-00701-DB, 2023 WL 8789209 at *2 (E.D. Cal. Dec. 19, 2023) (dismissing the plaintiff's due process claims for failing to allege facts pertaining to a specific policy, practice, or decision of a municipal official with final decision-making authority).

Here, Plaintiffs do not allege the warrants, force, detentions etc were pursuant to some unconstitutional policy, save perhaps in vague conclusory terms in the first through five claims. Plaintiffs certainly do not allege facts amounting to any unconstitutional practice. Therefore, the first through five claims, where intended to assert Monell claims against the City, should be dismissed.

## H.    Plaintiffs' Seventh claim for Failure to Supervise, Hire, Train and Discipline against the City fails

Under Monell, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). The plaintiff "must demonstrate a 'conscious' or 'deliberate' choice on the part of a municipality in order to prevail on a failure to train claim." *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008) (citation omitted). "Under this standard, [the plaintiff] must allege facts to show that the [municipality] 'disregarded the known or obvious consequence that a particular omission in their training program would cause [its] employees to violate citizens' constitutional rights.'" *Flores*, 758 F.3d at 1159 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). "[T]he identified deficiency in a

**DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

4889-8627-6541, v. 1

[municipality's] training program must be closely related to the ultimate injury." *Harris*, 489 U.S. at 391; see also *Riggi v. City of Placerville*, No. 2:11-cv-00753-MCE, 2011 WL 6396439, at *5 (E.D. Cal. Dec. 19, 2011) ("The 'closely related' or 'moving force' requirement is akin to the tort law causation standard of proximate cause.") (citation omitted). In addition, a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference' for purposes of failure to train." *Connick*, 563 U.S. at 62 (citation omitted); see also *Flores*, 758 F.3d at 1159 (same).

Here, the conclusory allegations of multiple claimed failures (¶ 142(a-j) are insufficient to meet the above standards.   The purported failures for firearm safety are irrelevant as this case did not involve the discharge of a weapon, merely pointing.  The claims arising from the use of SWAT to execute the warrant appear solely based on Plaintiffs' own experience, which is insufficient to establish an unconstitutional practice.  Therefore, the seventh claim for relief should be dismissed.

## I.    <u>Plaintiffs' Eighth claim against the City fails</u>

An "[o]fficial policy" means a formal policy, such as a rule or regulation adopted by the defendant, resulting from a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986); accord *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021).   Here, "failures" based on the conduct that Plaintiffs allegedly experienced are not tantamount to policies.   Random acts or isolated events do not satisfy the plaintiffs' burden to establish a custom or policy. *Picray v. Sealock*, 138 F.3d 767, 772 (9th Cir. 1998) (finding that the plaintiff's own experience was insufficient to establish a custom or policy).  Moreover, conclusory allegations are insufficient to survive dismissal. *Koch v. Sacramento County*, No. 2:23-CV-00701-DB, 2023 WL 8789209 at *2 (E.D. Cal. Dec. 19, 2023) (dismissing the plaintiff's due process claims for failing to allege facts pertaining to a specific policy, practice, or decision of a municipal official with final decision-making authority).

Here, the purported failures (¶s 150(a-g), Complaint) are mere conclusions ostensibly based on Plaintiffs' own singular experiences, which is not sufficient to state Monell claims.   Therefore, the eighth claim for relief should be dismissed.

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  August 11, 2025

PORTER SCOTT
A PROFESSIONAL CORPORATION


By /s/ John R. Whitefleet
John R. Whitefleet
Attorneys for Defendants

16

**DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

4889-8627-6541, v. 1