1  M. Steven Wang  SBN 191168
   City Attorney
2  Sari Myers Dierking SBN 226805
   Asst. City Attorney
3  **City Attorney's Office**
   **CITY OF FOLSOM**
4  50 Natoma Street
   Folsom, CA 95630
5  TEL: 916.461.6025; FAX: 916.351.0536

6  **P O R T E R  |  S C O T T**

7  A PROFESSIONAL CORPORATION
   John R. Whitefleet, SBN 213301
8  2180 Harvard Street, 500
   Sacramento, California 95815
9  jwhitefleet@porterscott.com
   TEL: (916) 929-1481, FAX: (916) 927-3706
10

11 Attorneys for Defendants CITY OF FOLSOM, JOSEPH HOWARD, BRIAN LOCKHART,
   ROMAN KEHM, ZACHARY WELLS, JOHN WAGNER, BRANDON MONSOOR, PAUL
12 RICE, DEREK KOUPAL, MICHAEL AUSTIN, JOSHUA SENA, EATHAN VAVACK, JOHN
   MONIZ

13
                        UNITED STATES DISTRICT COURT
14                      EASTERN DISTRICT OF CALIFORNIA
15

16 GEORGE P. UMBERGER II, LISABETH A.        CASE NO. 2:24-cv-010169-KJM-JDP
   KING, SAVANNAH R. BAILEY,
17                                           **DEFENDANTS'    REQUEST    FOR**
              Plaintiffs,                    **JUDICIAL NOTICE IN SUPPORT OF**
18 v.                                        **THEIR   MOTION   TO   DISMISS**
                                             **PLAINTIFF'S COMPLAINT**
19 CITY OF FOLSOM, DETECTIVE JOSEPH
20 HOWARD, COMMANDER BRIAN                   **Date: October 9th, 2025**
   LOCKHART, SERGEANT ROMAN                  **Time: 10:00 AM**
21 KEHM, SERGEANT ZACHARY WELLS,             **Courtroom: 9, 13th Floor (via Zoom)**
   SERGEANT JOHN WAGNER,
22 SERGEANT BRANDON MONSOOR,                 Complaint Filed: 04/22/2024
   SERGEANT PAUL RICE, CORPORAL
23 DEREK KOUPAL, OFFICER MICHAEL
24 AUSTIN, OFFICER JOSHUA SENA,
   OFFICER EATHAN VAVACK, AND
25 OFFICER JOHN MONIZ,
26
              Defendants.
27 _____/

28 / / /

                                    1
**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR MOTION TO DISMISS**
                          **PLAINTIFF'S COMPLAINT**

4889-8627-6541, v. 1

Defendants hereby request that this Court take judicial notice of the following:

1. Search Warrant and Affidavit No. 230719115230 dated July 11, 2023, to search Plaintiff Umberger's home and business;

2. Return on Search Warrant No. 230719115230, showing items seized.

3. Search Warrant and Affidavit No. 230906085709 dated July 18, 2023, to search items seized from Search Warrant No. 230719115230.


Dated:  August 11, 2025                                  PORTER SCOTT
                                                    A PROFESSIONAL CORPORATION


                                              By /s/ John R. Whitefleet
                                                  John R. Whitefleet
                                                  Attorney for Defendants

**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

4889-8627-6541, v. 1

# EXHIBIT A

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SACRAMENTO**

**SW No:** 230719115230

# ORDER BY MAGISTRATE

## (COVER PAGE)

**Magistrate:** Jane Ure
**Issued:** Jul 11, 2023

**Type:** Search Warrant
**Order ID:** 2307111135549
**Affiant:** Joseph Howard
**Badge No:** 251
**Email:**
**Phone No:**
**DA Email:**
**Agency:** FOLSOM POLICE DEPARTMENT
**Agency ORI:**
**Docket No:** 23-2222

☐ Night Service Requested
☐ Emergency Service Requested
☐ Order to Seal Requested
☐ Order to Delay Notification
☑ Warrant Return Required



Search Warrant No.

# SUPERIOR COURT OF CALIFORNIA
## County of Sacramento

# SEARCH WARRANT AND AFFIDAVIT

## (AFFIDAVIT)

**I, Detective Joseph Howard #251,** swears under oath that the facts expressed by him/her in the attached and incorporated statement of probable cause, consisting of **15 pages**, are true and that based thereon he/she has probable cause to believe and does believe that the property described below is lawfully seizable pursuant to Penal Code Section 1524, as indicated below, and is now located at the locations set forth below. Wherefore, affiant requests that this Search Warrant be issued.

*Joseph Howard*

Joseph Howard (Jul 11, 2023 11:36 PDT)
Signature,  Joseph Howard

Reviewed by:   ____DDA S. Pajer (by email)_____  Date:  July 11, 2023
(Deputy District Attorney)

## (SEARCH WARRANT)

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICE OFFICER, OR PEACE OFFICER IN THE COUNTY OF SACRAMENTO:**

Proof by affidavit having been made before me by **Detective Joseph Howard #251**, that there is probable cause to believe that the property described herein may be found at the locations set forth herein and that it is lawfully seizable pursuant to Penal Code Section 1524 as indicated below by checked box(es) (☒) in that:

☐　　It was stolen or embezzled. [Penal Code Sec. 1524(a)(1)]

☐　　It was used as the means of committing a felony. [Penal Code Sec. 1524(a)(2)]

☐　　It is possessed by a person with the intent to use it as means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery. [Penal Code Sec. 1524(a)(3)]

☒　　It tends to show that a felony has been committed or that a particular person has committed a felony. [Penal Code Sec. 1524(a)(4)]

☐ It tends to prove that sexual exploitation of a child (Penal Code Section 311.3), or possession of matter depicting sexual conduct of a person under the age of 18 years (Penal Code Section 311.11), has occurred or is occurring. [Penal Code Sec. 1524(a)(5)]

☐ An arrest warrant exists for the target of the search warrant. [Penal Code Sec. 1524(a)(6)]

☐ It tends to show that property was stolen or embezzled constituting a misdemeanor, or that property or things are in the possession of any person with the intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom that person may have delivered them for the purpose of concealing them or preventing their discovery. [Penal Code Sec. 1524(a)(7)]

☐ It tends to show a violation of Labor Code Section 3700.5 or that a particular person violated the Labor Code Section 3700.5. [Penal Code Sec. 1524(a)(8)]

☐ It includes a firearm or deadly weapon at the scene of, or at the premises of the person arrested in connection with, a domestic violence incident involving a threat to human life or a physical assault. [Penal Code Sec. 1524(a)(9)]

☐ It includes a firearm owned by, or in the possession of, or in the custody or control of, a person described in Welfare and Institutions Code Section 8102(a). [Penal Code Sec. 1524(a)(10)]

☐ It includes a firearm owned by, or in the possession of, or in the custody or control of, a person who is prohibited from possessing a firearm pursuant to Family Code Section 6389 and the person has failed to relinquish the firearm. [Penal Code Sec. 1524(a)(11)]

☐ It will provide tracking device information that constitutes evidence of a felony or a misdemeanor violation of either the Fish and Game Code or Public Resources Code, or will tend to show that a particular person has violated the same, or to locate a person who has violated the same. [Penal Code Sec. 1524(a)(12)]

☐ It includes a firearm or ammunition owned by, or in the possession of, or in the custody or control of, a person who is subject to a gun violence restraining order, and the person has failed to relinquish the firearm. [Penal Code Sec. 1524(a)(14)]

☐ It includes a firearm owned by, or in the possession of, or in the custody or control of, a person who is prohibited from possessing a firearm pursuant to Penal Code Sections 29800 or 29805, and the person has failed to relinquish the firearm. [Penal Code Sec. 1524(a)(15)]

☐ It includes controlled substances, or a device, contrivance, instrument, or paraphernalia used for using or administering a controlled substance. [Penal Code Sec. 1524(a)(16)]

☐ It tends to show that violation of Penal Code Section 647(j), paragraphs (1), (2), and/or (3) has occurred or is occurring. [Penal Code Sec. 1524(a)(18)]

☐ It includes data from a recording device installed by the manufacturer of a vehicle that constitutes evidence that tends to show the commission of a felony or misdemeanor involving a vehicle, resulting in death or serious bodily injury. [Penal Code Sec. 1524(a)(19)]

☐ It tends to show that a violation of Penal Code Section 647.9 has occurred or is occurring. [Penal Code Sec. 1524(a)(20)]

**YOU ARE THEREFORE COMMANDED TO SEARCH:**

**THE FOLLOWING LOCATION(S):**

(1) **1780 Creekside Drive, Apartment 1125, Folsom, CA, 95630.** 1780 Creekside Drive, Apartment 1125, is located in the County of Sacramento, State of California, and is further described as an apartment located within the apartment complex called the "Falls at Willow Creek". The complex is made up of 28 apartment buildings that are light brown in color. Apartment 1125 is located in Building 11 on the second floor. 1125 has a brown door and the numbers '1125' affixed to the wall to the immediate left of the door. The entrance door to the apartment faces east.

Also to include all attics, basements, rooms, garages, outbuildings, storage sheds, garbage cans, safes, designated lockers or storage space, and containers located within the property boundaries associated with the premises located at **1780 Creekside Drive, Apartment 1125, Folsom, CA, 95630.**

(2) **Orangevale Jewelry and Loan at 9268 Greenback Lane, Orangevale, CA, 95662.** Orangevale Jewelry and Loan is a pawn shop that is located in the County of Sacramento, State of California, and is further described as a commercial business located at a business strip mall. The front door to the business faces north. Above the front door is a sign that states "Pawn Shop". The front of the business has several large windows to the right of the entrance door.

Also to include all attics, basements, rooms, garages, outbuildings, storage sheds, garbage cans, safes, designated lockers or storage space, and containers located within the property boundaries associated with the premises located at **9268 Greenback Lane, Orangevale, CA, 95630.**

In the event that law enforcement officers encounter safes, locked cabinets, or other secured containers at the location(s) or in vehicle(s) listed in this search warrant, it is the direction of this Court those officers or their agents access those items to search for evidence listed in this search warrant. Officers are authorized to use the assistance of a locksmith or other experts to open locked safes or storage containers. Officers may remove the safe or storage container to a location where it can be opened at a later date.

**THE FOLLOWING PERSON(S):**

(1) **George Umberger,** further described as a male adult, standing approximately six feet (6'00") tall, weighing approximately 180 pounds, with brown hair and green eyes, with a date of birth of                    a Sacramento County XREF number of            ;

**THE FOLLOWING VEHICLE(S):**

(1) A green **Toyota Sequoia (SUV) with California license plate**            and Vehicle

Identification Number (VIN)

**FOR THE FOLLOWING PROPERTY:**

**(1)**   Computer systems, as defined in Penal Code Section 502, subdivision (b) and hereafter referred to as "electronic storage devices", which are capable of storing/containing digital data; to include tablet computers, laptop computers, and/or desktop computers. An additional search warrant will be obtained to view any information contained within those electronic storage devices, consistent with the provisions of the California Electronic Communications Privacy Act (ECPA).  Additionally, the searching Peace Officers are authorized to seize and book said electronic devices and transfer them to a law enforcement agency location prior to commencing the search of the items.  Furthermore, said search may continue beyond the ten-day period beginning upon issuance of this Search Warrant, to the extent necessary to complete the search on the electronic devices.

**Additional Orders:**

**(1)**   **Use of Force to Breach Authorized**:  Officers may use necessary force to breach any gates, fences, door, and/or windows to gain entry into the location(s) to be searched pursuant to this warrant.

**(2)**   **Use of Force to Open Safes and/or Locked Containers Authorized**:  Officers may use necessary force to breach any safe and/or storage container believed to contain contraband, controlled substances, or items to be seized pursuant to this warrant.

**(3)**   **Use of Trained Law Enforcement Dogs Authorized**:  Investigating officers are authorized to utilize trained dogs for the purpose of locating contraband during the service of this search warrant.

**(4)**   **Use of Outside Experts Authorized**:  Outside experts acting under the direct control of the investigating officers are authorized to enter the above listed locations in order to photograph, video tape, diagram, and process the scene for latent fingerprints and trace evidence.

**(5)**   **Use of Federal Agents in Execution of Warrant**:  The court authorizes the use of federal agency personnel, including, but not limited to, special agents of the Federal Bureau of Investigation (FBI), Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and/or the Drug Enforcement Administration (DEA), to accompany the Peace Officer(s) executing this warrant for the purpose of assisting in the service and execution of this warrant as provided for under California Penal Code Sections 1530 and 1538.

**(6)**   **Use of Remote Operated Reconnaissance Technology**:  For the reasons set forth in the accompanying affidavit, the officers who execute this warrant are authorized to employ a small Unmanned Aerial Vehicle (sUAV) and/or a small Remote Operated

Vehicle (sROV) as necessary to complete their mission and protect the safety of the officers, the occupants of the premises, and others in the vicinity.  Such use shall be limited to providing officers with a real-time view of the premises and the area nearby for the purpose of detecting attempts to escape or utilize violence against the officers, enabling officers to obtain a full real-time view of the structure they are about to enter and the surrounding area and, if necessary, tracking the flight of escapees. Furthermore, the officers are ordered to record and retain the information collected by the sUAV and/or sROV so that it may be available to both the prosecution and defense in subsequent court proceedings.  The sUAV and/or sROV shall *not* be used as an eavesdropping audio device in locations where officers would not have lawful access and/or be able to overhear themselves; in such scenarios, the sUAV and/or sROV shall be limited to video/visual viewing only with no audio.

**(7)  Destruction of Contraband**: Pursuant to Health and Safety Code Section 11479, the Court authorizes the destruction of excess quantities of any seized suspected controlled substances and orders that the provisions of Health and Safety Code Section 11479 be followed in executing said order.

**(8)  Night Service Authorization**: The Court, having reviewed the search warrant and the affidavit in support thereof and finding good cause, based upon the facts stated by the affiant in the affidavit, as well as the "Night Service Justification" on page(s) <u>N/A</u> the Court exercises its discretion under Penal Code Section 1533, and finds that there is justification to serve this warrant at any hour of the day or night.
☐ Requested by affiant     ☒ Not requested by affiant

☐ Order granted
☑ Order not granted and/or not applicable

**(9)  Sealing of Search Warrant, Affidavit, and Return**: Affiant has established good cause for a sealing order pursuant to Rule 2.550 of the California Rules of Court, and as such, this Search Warrant, the supporting Affidavit, and the Return are ordered sealed and shall not become a public record.  This Search Warrant, Affidavit, and Return shall be delivered into the custody of the Clerk of the Superior Court and remain sealed in the custody of the Clerk unless further ordered by the court.
☐ Requested by affiant     ☒ Not requested by affiant

☐ Order granted
☑ Order not granted and/or not applicable

**(10)  *Hobbs* Sealing of Portion of Search Warrant, Affidavit, and Return:** Affiant has established good cause for a sealing order pursuant to *People v. Hobbs* (1994) 7 Cal.4th 948 and Evidence Code Sections 1040-1042, and as such, a portion of this Search Warrant, the supporting Affidavit, and/or the Return are ordered sealed and shall not become a public record, as further stated below.  This Search Warrant,

Affidavit, and Return shall be delivered into the custody of the Clerk of the Superior Court and remain sealed in the custody of the Clerk as directed by the court's *Hobbs* sealing order unless further ordered by the court.

☐ Requested by affiant    ☒ Not requested by affiant

☐ Order granted
☑ Order not granted and/or not applicable

**(11) No Prohibited Violations**: Based on Affiant's attestation pursuant to Penal Code Sections 1524(h) and 1524.2(c), the Court finds that the evidence sought pursuant to this warrant is not related to an investigation into, or enforcement of, a prohibited violation as defined in Penal Code Section 629.51.

**Grounds for Sealing**:

☐ Official information (Evid. Code § 1040)    ☐ Informant protection (Evid. Code § 1041)

☐ Evidence destruction or tampering    ☐ Intimidation of potential witnesses

**AND TO SEIZE IT IF FOUND** and bring it forthwith before me, or this court, at the courthouse of this court.

This Search Warrant and incorporated Affidavit was sworn to and subscribed before me this

11 day July, 2023, at 11:52 AM.

Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

*Jane Ure*
Jane Ure (Jul 11, 2023 11:52 PDT)
Signature, Jane Ure
Judge of the Superior Court of California, Sacramento County

**NIGHT SEARCH APPROVED:** ☐ YES    ☐ NO

Executed by: Joseph Howard    Date: 7/13/23    Hr. 0700  ☑ AM    ☐ PM

For further information concerning this search warrant, contact the affiant at:

**Detective Joseph Howard #251**
Folsom Police Department
46 Natoma Street, Folsom, CA 95630

Case/Report No. 23-2222

# AFFIDAVIT OF Joseph Howard
# IN SUPPORT OF A SEARCH WARRANT

I, Officer Joseph Howard #251, your affiant, have been a sworn Police Officer with the Folsom Police Department since February of 2019. Your affiant graduated from the Sacramento County Sheriff's Academy in February of 2019. The Sheriff's Academy consisted of approximately 950 hours of formalized training. During the P.O.S.T. certified Sheriff's Academy, your affiant was trained in the process of conducting criminal investigations. Following completion of the Sheriff's Academy, your affiant was assigned to the Patrol Division. While working in the Patrol Division from February of 2019 to September of 2022, your affiant conducted and assisted in numerous criminal investigations involving various crimes, including but not limited to, theft, fraud, forgery, burglary, automobile theft, domestic violence, sexual assault, illegal narcotics, and firearms. Through these investigations, your affiant has conducted interviews with victims, witnesses, and suspects. From this experience, your affiant had the opportunity to interview suspects about the manner in which they commit crimes. As a Patrol Officer, your affiant has conducted numerous investigations involving narcotics, including possession of narcotics for sale. Your affiant has conducted or assisted in no less than one hundred (100) investigations related to simple possession, possession of narcotics for sale, and possession of narcotic paraphernalia. From September 2022 to June of 2023, your affiant was a Detective assigned the Special Investigation Unit (SIU), which primarily focused on narcotics, violent crime, and fugitive apprehension. Your affiant is currently assigned to the Criminal Investigations Unit (CID) and primarily focuses on property crime. Your affiant has been assigned to this unit since June of 2023. From 2013 to 2018, your affiant was enrolled at California State University, Sacramento and obtained a Bachelor's Degree in Criminal Justice.  In September of 2021, your affiant became a certified Drug Recognition Expert (D.R.E.). As a Drug Recognition Expert, your affiant is trained in the detection of the signs and symptoms associated with subjects who are under the influence of drugs and/or alcohol. Your affiant has also completed ICI Major Narcotics Investigation School in January of 2023.

**CASE SUMMARY**

The information contained in this affidavit is based upon information provided by officers and witnesses to whom I have personally spoken with, and upon reports, and other documents I reviewed.  Your affiant has not included every fact known to your affiant concerning this investigation.  Your affiant believes the following facts are necessary and appropriate to establish the appropriate foundation for the requested search warrant.

On 6/7/23, Officer Stokhaug responded to 1205 Souza Way in Folsom for a suspicious circumstance report. The call stated the reporting party located a possible recording device in her home and suspects that her ex-husband had left it. Officer Stokhaug contacted the reporting party identified as V-Jennifer Umberger. V-Jennifer Umberger informed Officer Stokhaug that she found a device on her side yard this morning.

V-Jennifer Umberger told Officer Stokhaug in summary that her ex-husband, identified as S-George Umberger, had known about a lot of conversations that she was having with her attorney which affected their divorce settlement. V-Jennifer Umberger stated S-George Umberger had also known about conversations she was having with her son and had regurgitated a conversation that she had with her son while they were in the garage of the residence. V-Jennifer Umberger's son suspects that the device that was located is recording them.

V-Jennifer Umberger stated the device was on when she found it and she turned it off. V-Jennifer Umberger stated that S-George Umberger has not had access to the house and believes he's been in the backyard. V-Jennifer Umberger stated that S-George Umberger was last at the residence several weeks prior to clean the pool.

V-Jennifer Umberger stated in summary that S-George Umberger knew about her current

boyfriend, his name, as well as her boyfriend's ex-wife's name. V-Jennifer Umberger stated she tries to have conversations away from her kids and will go into her backyard or garage to have them.

V-Jennifer Umberger claimed that S-George Umberger knew about stuff that she had talked to her attorney about. V-Jennifer Umberger stated that when she would go to court, S-George Umberger would already know what they were going to discuss. V-Jennifer Umberger claimed that at their last court date two weeks prior, S-George Umberger knew every angle that her attorney was going after. V-Jennifer Umberger's attorney contacted her and believed that S-George Umberger had hacked into her email because of everything that he knew and requested V-Jennifer Umberger change her email address.

V-Jennifer Umberger stated that S-George Umberger has not lived at the residence since May of 2022.

Umberger, the son of V-Jennifer Umberger and S-George Umberger, was contacted by Officer Stokhaug.     Umberger showed Officer Stokhaug the conversation that he had with his father. In the text thread conversation, S-George Umberger asks     in summary as to why his mother was having     ask him where he is living     denies this and S-George Umberger responds stating that he "heard the conversation". An image of this text message thread is below:



The text conversation continues between S-George Umberger and his son     . S-George Umberger states via text that he heard a conversation between     and his mother in which V-Jennifer Umberger had asked     to find out where S-George Umberger was living. An image of this text message thread is below:



V-Jennifer Umberger showed Officer Stokhaug where the device was located, which was just outside the side door that leads into the garage. The door is in her backyard and behind the fence that leads to the front of the house and the front garage door. The gate has a latch, but does not lock. V-Jennifer Umberger stated the device was found on the ground next to the door, under the bush.

Officer Stokhaug took possession of the device and brought it back to the police department. Officer Stokhaug connected the device to one of the Folsom PD computers with a USB plug. Officer Stokhaug was able to see approximately 40 different recordings on the device. Officer Stokhaug booked the device **(191-1)** and the SD Card from the device **(191-2)** into Evidence.

On 6/12/23, V-Jennifer Umberger came to the Folsom Police Department and gave Officer Stokhaug a USB key with a video on it. V-Jennifer Umberger stated that she put cameras in her side yard and observed S-George Umberger in her backyard looking around in the same area where she located the recording device. V-Jennifer Umberger stated that George had wanted to come to the residence to get some pots. I, Detective Howard, later reviewed this video. The video shows S-Umberger on the ground appearing to search on the ground near the bush next to the side garage door. S-Umberger then gets up and begins looking oddly around the area for a few seconds. From watching the video, it is my opinion that S-Umberger is looking for something.

I later spoke with Officer Stokhaug via telephone and inquired about the recordings found on the device. Officer Stokhaug stated he listened to some of the recordings on the device and heard V-Jennifer Umberger's voice.

Based on the circumstances in this case, it is believed that the device found by V-Jennifer Umberger is an electronic recording device. It is further believed based on the evidence in this case, including the text messages between S-George Umberger and his son, Will, and the video showing S-Umberger appearing to be looking around in the same area where the recording device was found, that the device is associated to S-George Umberger.

On 6/21/23, I, Detective Howard, authored a search warrant for the recording device (191-1) and the micro-SD card (191-2) for this case. The warrant was signed by the Honorable Judge S. Gevercer on 6/21/23. Detective Thibeault conducted forensic downloads of the above devices using Cellebrite.

On 6/27/23, I, Detective Howard, reviewed the forensic download of the recording device through Cellebrite Physical Analyzer. In reviewing the download, I located several audio files. I listened to several of the audio files to determine if it captured any audio of V-Jennifer Umberger speaking. While listening to some of the audio files, I located several that contained audio with V-Jennifer Umberger's voice in them, that appeared to sound as if she was speaking on the phone.

In speaking with Detective Patrick Thibeault, who is assigned as an investigator at the Sacramento Hi-Tech Crimes Task Force, and who has experience in conducting electronic downloads of digital devices, such as computers/laptops/PC's, he informed me that digital devices can contain data records of connections with external devices, such as the recording device in this case. The data can be obtained through a forensic download and can show which external devices may have connected with a digital device. Data from S-Umberger's digital devices can also show software install directions for the recording device. If S-Umberger had completed the software install directions for the recording device, data could be located showing this installation on S-Umberger's digital devices. By obtaining this data from S-Umberger's digital devices, it can further show the relationship between S-George Umberger and the recording device, and show that S-Umberger had previously had dominion and control over the recording device.

On 6/29/23, Officer E. Vavak and Officer L. Vo responded to 9268 Greenback Lane in Orangevale (Orangevale Jewelry and Loan). According to V-Jennifer Umberger, S-George Umberger is the owner of the pawn shop located at this address. Officer Vavak and Officer Vo served S-George Umberger with a Domestic Violence Restraining Order (DVRO). In speaking with S-George Umberger, he tells Officer Vavak and Officer Vo that he is the sole owner of the pawn shop.

In speaking with V-Jennifer Umberger, she advised me that S-George Umberger lives at 1780 Creekside Drive, Apartment #1125. V-Umberger stated the DVRO that she obtained against S-George Umberger has 1780 Creekside Drive, Apartment #1125 listed as S-George Umberger's address. On 7/3/23, I conducted surveillance outside building #11 at 1780 Creekside Drive. At approximately 1400 hours, I observed S-George Umberger driving his Toyota Sequoia (CA            at the apartment complex. S-Umberger parked the Toyota Sequoia near building #11. I observed S-George Umberger exit his vehicle and walk up a flight of stairs to the second floor of the apartment building. I observed S-George Umberger walk toward the door of apartment #1125, where I then lost sight of him. Based on this observation, I came to the conclusion that S-George Umberger had entered into apartment #1125 at 1780 Creekside Drive.

Based upon my training and experience, as well as the training and experience of other

experienced investigators with whom I have spoken, as well as the facts and circumstances of this investigation, as described above, I formed the opinion that **George Umberger** was in violation of Penal Code Sections 632 (Eavesdropping) and that a search of the requested location(s), vehicle(s), and person(s) will reveal evidence of those offenses and/or **Umberger's** involvement in those offenses.

I request that the search warrant authorizes the seizure of any computers and computer systems as evidence for the purpose of later applying for search warrants for said devices.  Any device containing electronically stored data seized pursuant to this warrant will not be searched until an additional search warrant can be obtained authorizing the search of the device in compliance with the California Electronic Communications Privacy Act (ECPA).

Based on my training and experience, as well as the training and experience of other experienced investigators with whom I have spoken, as well as my review of other crime reports, I know that, although it may be possible to search these digital storage devises where they are located, investigators with specialized skills, software and equipment are frequently needed to examine the device and extract and preserve the data and information found within. I know this is a process, which cannot usually be performed where the digital storage device is located, thus I request that this warrant authorize the seizure of digital storage devices, which will be searched only upon your affiant or another law enforcement officer obtaining a subsequent search warrant in compliance with the provisions of the California ECPA.

In the event that law enforcement officers encounter safes, locked cabinets, or other secured containers at the location or in the vehicle listed in this affidavit, it is requested that the Court direct the officers or their agents to access those items to search for evidence listed in this affidavit. I know that some safes or locked storage containers may require the assistance of a locksmith or other experts to open. I therefore request permission to employ such experts if needed and to remove the safe or storage container to a location where it can be opened.

**REQUEST TO USE LAW ENFORCEMENT RECONNAISSANCE TECHNOLOGY**

Based on my training and experience, as well as the training and experience of other experienced investigators with whom I have spoken, as well as my review of other crime reports, I am aware that there exists an increased threat of violence, often involving firearms and other deadly weapons whenever officers enter a structure for the purpose of executing a search warrant to search for firearms, controlled substances, weapons, the fruits and instrumentalities of a violent crime, and/or to execute an arrest warrant on an individual wanted for a violent crime.  Based on my training and experience, I have formed the opinion that this heightened threat exists for two reasons. First, in executing warrants for these purposes, officers frequently discover firearms and other deadly weapons, and these weapons are often located in places and in a manner that enable the occupants to quickly use them against anyone who is perceived as a threat.  Second, officers will give notice of their authority and purpose either before they enter the structure or, in the case of exigent circumstances, shortly thereafter.  In any event, when the occupants become aware of the officers' authority and objective, it is not unusual for them to panic because of the possibility that they are about to be taken into custody and subsequently prosecuted and imprisoned.  In this fight-or-flight

mental state, the occupants may become desperate and attempt to disrupt the officers' mission by any means necessary, including attempted escape and the use of deadly force.

Officers may, however, be able to avoid or significantly reduce these threats by utilizing a small Unmanned Aerial Vehicle (sUAV) and/or a small Remote Operated Vehicle (sROV) to fly over, around, and/or in the structure before after the entry is made, and thereby provide them with vital information such as the following: a real-time view of the premises' exterior which will enable supervisors to determine where officers can be safely posted to prevent escape into the surrounding neighborhood; any movement from an open door or window that may indicate the occupants are attempting to escape or use deadly force against officers inside; the location of occupants who fled the premises before or during the officers' arrival; and real-time information as to the presence of people inside and outside the premises who may pose a threat to the officers inside. I am aware that, these types of reconnaissance technology, both sUAV and sROV technology, are now commonly used for these purposes by law enforcement agencies throughout the country, and that their use has proven to be both safe and effective. Furthermore, law enforcement agencies and fire departments now commonly employ these technologies to help conduct search and rescue missions and provide officers with real-time observations at the scenes of crimes and emergencies.

Your affiant is further aware that the use of the sUAV and/or sROV inside a structure implicates certain constitutional and statutory rights, including the prohibition of the use of "wiretaps" or other forms of intercepting and recording communications (for example, as prohibited by Penal Code Section 632). As such, when the sUAV and/or sROV is being deployed inside a structure, such use will be limited to video and/or visual viewing only, and limited to giving the officers executing the warrant video or visual information to ascertain potential threats to the safety of the officers and the public, including the suspects inside. The use of any audio equipment will be limited to exterior use only.

Based on my training and experience, I am also aware that the employment of a sUAV and/or sROV will be minimally intrusive to people who live or work nearby. The reasons are as follows:

(1) The sUAV's and/or sROV's cameras will ordinarily be focused almost exclusively on the target structure and its curtilage.

(2) In the case of the sUAV, it makes little, if any, noise that can be heard from the ground.

(3) In the case of the sUAV, it will be registered with the Federal Aviation Administration (FAA).

(4) The sUAV will be piloted by a qualified individual who has the necessary FAA certifications.

(5) The sROV will be remotely operated by a qualified individual with the requisite training and experience to operate the vehicle safely and within Sacramento Police Department (SPD) policy.

Page **13** of 15

(6) In the case of the sUAV, it will be flown in accordance with FAA regulations and at altitudes authorized by the FAA.

(7) The sUAV and/or sROV will be used only the amount of time that is reasonably necessary to complete the mission.


**AFFIANT'S ATTESTATION OF NO PROHIBITED VIOLATIONS**

Pursuant to Penal Code Sections 1524(h) and 1524.2(c), your affiant attests and declares, based on my training and experience, the facts and circumstances of the investigation, as explained above, as well as based upon my position as an investigating officer in this investigation that the evidence sought by this warrant is not related to an investigation into, or enforcement of, a prohibited violation, as defined by Penal Code Section 629.51.

Pursuant to Penal Code Section 1524, I believe a search of the above-described locations, vehicles, and/or individuals will reveal evidence of the identity and motive of the person(s) responsible for these crimes, namely, a violation of **Penal Code Section 632(a) (Eavesdropping)**, as well as, the means of perpetration and the circumstances surrounding the commission of the crimes.

Based on information contained in this affidavit, your affiant respectfully requests that a search warrant be issued for the following:

**THE FOLLOWING LOCATION(S):**

(1) **1780 Creekside Drive, Apartment 1125, Folsom, California, 95630.** 1780 Creekside Drive, Apartment 1125, is located in the County of Sacramento, State of California, and is further described as an apartment located within the apartment complex called the "Falls at Willow Creek". The complex is made up of 28 apartment buildings that are light brown in color. Apartment 1125 is located in Building 11 on the second floor. 1125 has a brown door and the numbers '1125' affixed to the wall to the immediate left of the door. The entrance door to the apartment faces to the east.

Also to include all attics, basements, rooms, garages, outbuildings, storage sheds, garbage cans, safes, designated lockers or storage space, and containers located within the property boundaries associated with the premises located at **1780 Creekside Drive, Apartment 1125, Folsom, California, 95630.**

(2) **Orangevale Jewelry and Loan at 9268 Greenback Lane, Orangevale, CA 95662.** Orangevale Jewelry and Loan is a pawn shop that is located in the County of Sacramento, State of California, and is further described as a commercial business located at a business strip mall. The front door to the business faces north. Above the front door is a sign that states "Pawn Shop". The front of the business has several large windows to the right of the entrance door.

Also to include all attics, basements, rooms, garages, outbuildings, storage sheds, garbage cans, safes, designated lockers or storage space, and containers located within the property boundaries associated with the premises located at **9268 Greenback Lane, Orangevale, CA, 95662.**

In the event that law enforcement officers encounter safes, locked cabinets, or other secured containers at the location(s) or in vehicle(s) listed in this search warrant, your affiant specifically requests that this Court authorize searching officers or their agents to access those items to search for evidence listed in this search warrant, including the assistance of a locksmith or other experts to open locked safes or storage containers, as well as authorization to remove the safe or storage container to a location where it can be opened at a later date.

**THE FOLLOWING PERSON(S):**

(1) **George Umberger,** further described as a male adult, standing approximately six feet tall, weighing approximately 180 pounds, with brown hair and green eyes, with a date of birth of            a Sacramento County XREF number of            ;

**THE FOLLOWING VEHICLE(S):**

(1) A green **Toyota Sequoia (SUV) with California license plate**       and Vehicle Identification Number (VIN)                   ;

**FOR THE FOLLOWING PROPERTY:**

(1) Computer systems, as defined in Penal Code Section 502, subdivision (b) and hereafter referred to as "electronic storage devices", which are capable of storing/containing digital data; to include tablet computers, laptop computers, and/or desktop computers. An additional search warrant will be obtained to view any information contained within those electronic storage devices, consistent with the provisions of the California Electronic Communications Privacy Act (ECPA).  Additionally, the searching Peace Officers are authorized to seize and book said electronic devices and transfer them to a law enforcement agency location prior to commencing the search of the items.  Furthermore, said search may continue beyond the ten-day period beginning upon issuance of this Search Warrant, to the extent necessary to complete the search on the electronic devices.

# EXHIBIT B



SUPERIOR COURT OF CALIFORNIA
COUNTY OF SACRAMENTO

SW No: 230719115230

Search Warrant

# RETURN OF SEARCH WARRANT

etective Joseph Howard   Joseph Howard                     being sworn, says that they conducted a search pursuant to the Search Warrant described below:

Issuing Magistrate:  Jane Ure
Magistrate's Court:  Superior Court of California, County of Sacramento, Judicial District
Date of Issuance:  Jul 11, 2023
Date of Service: 7/13/23

The location(s) in the attached search warrant and affidavit described as:

-S-Umberger residence located at 1780 Creekside Drive, Apt. 1125, Folsom, CA
-S-Umberger business located at 9268 Greenback Lane, Orangevale, CA (Orangevale Jewelry and Loan)

and the seized property:

☐ described in the attached and incorporated inventory.
☑ described below:

-Only items were seized from S-Umberger's business (Orangevale Jewelry and Loan:
(1)Evidence Item 243-1, further described as a black SanDisk 2GB SD Card.
(2)Evidence Item 243-2, further described as a black HP Desktop Computer (SN:MXL14418P3).
(3)Evidence Item 243-2-100, further described as an Iomega external drive attached to item 243-2 (SN:GSAB05B9B3).
(4)Evidence Item 243-2-101, further described as a Microsoft USB attached to item 243-2.
(5)Evidence Item 243-3, further described as a black HP All-In-One Computer (SN:8CC23529YC).
(6)Evidence Item 243-4, further described as a black Dell Desktop Computer (SN:HGMBX01).
(7)Evidence Item 243-5, further described as a black HP Desktop Computer (SN:2UA3091KM7).
(8)Evidence Item 243-6, further described as a WD MyPassport External Drive (SN:WXG1EC3HSH57)
(9)Evidence Item 243-7, further described as a PMY 64 GB USB.

I further swear that this is a true and detailed account of all the property taken by me pursuant to the search warrant, and pursuant to Penal Code Sections 1528 and 1536, all such property will be retained in my custody until a final disposition has been rendered whereupon all property, except contraband, will be returned to its rightful owner or disposed of according to law.

*Joseph Howard*
Joseph Howard (Jul 18, 2023 08:11 PDT)
Signature of Affiant

Sworn to and Subscribed before me this 18 day  July, 2023, at 8:56 AM.

*Sharon A Lueras*
Sharon A Lueras (Jul 18, 2023 08:56 PDT)
Signature, Judge of the Superior Court of California, Sacramento County

EXHIBIT C

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SACRAMENTO

**SW No:** 230906085709

# ORDER BY MAGISTRATE

## (COVER PAGE)

**Magistrate:** Sharon A Lueras
**Issued:** Jul 18, 2023

**Type:** Search Warrant
**Order ID:** 2307181141345
**Affiant:** Joseph Howard
**Badge No:** 251
**Email:**
**Phone No:**
**DA Email:**
**Agency:** FOLSOM POLICE DEPARTMENT
**Agency ORI:**
**Docket No:** 23-2222

☐ Night Service Requested
☐ Emergency Service Requested
☐ Order to Seal Requested
☐ Order to Delay Notification
☑ Warrant Return Required

Jul 18, 2023 11:41 AM



Search Warrant No.

# SUPERIOR COURT OF CALIFORNIA
## County of Sacramento

# SEARCH WARRANT AND AFFIDAVIT
## Court Ordered Search of Cellular Phone/Electronic Device

### (AFFIDAVIT)

**I, Detective Joseph Howard #251,** swears under oath that the facts expressed by him/her in the attached and incorporated statement of probable cause, consisting of **16 pages**, are true and that based thereon he/she has probable cause to believe and does believe that the property described below is lawfully seizable pursuant to Penal Code Section 1524, as indicated below, and is now located at the locations set forth below.  Wherefore, affiant requests that this Search Warrant be issued.

*Joseph Howard*

Joseph Howard (Jul 18, 2023 11:44 PDT)

Signature,  Joseph Howard

Reviewed by: ___DDA S.Pajer  (by email)_____ Date:  July 18, 2023
(Deputy District Attorney)

### (SEARCH WARRANT)

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICE OFFICER, OR PEACE OFFICER IN THE COUNTY OF SACRAMENTO:**

Proof by affidavit having been made before me by **Detective Joseph Howard #251**, that there is probable cause to believe that the property described herein may be found at the locations set forth herein and that it is lawfully seizable pursuant to Penal Code Section 1524 as indicated below by checked box(es) (☒) in that:

☐ It was stolen or embezzled. [Penal Code Sec. 1524(a)(1)]

☐ It was used as the means of committing a felony. [Penal Code Sec. 1524(a)(2)]

☐ It is possessed by a person with the intent to use it as means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery. [Penal Code Sec. 1524(a)(3)]

☒ It tends to show that a felony has been committed or that a particular person has committed a felony. [Penal Code Sec. 1524(a)(4)]

☐ It tends to prove that sexual exploitation of a child (Penal Code Section 311.3), or possession of matter depicting sexual conduct of a person under the age of 18 years (Penal Code Section 311.11), has occurred or is occurring. [Penal Code Sec. 1524(a)(5)]

☐ An arrest warrant exists for the target of the search warrant. [Penal Code Sec. 1524(a)(6)]

☐ It tends to show that property was stolen or embezzled constituting a misdemeanor, or that property or things are in the possession of any person with the intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom that person may have delivered them for the purpose of concealing them or preventing their discovery. [Penal Code Sec. 1524(a)(7)]

☐ It tends to show a violation of Labor Code Section 3700.5 or that a particular person violated the Labor Code Section 3700.5. [Penal Code Sec. 1524(a)(8)]

☐ It includes a firearm or deadly weapon at the scene of, or at the premises of the person arrested in connection with, a domestic violence incident involving a threat to human life or a physical assault. [Penal Code Sec. 1524(a)(9)]

☐ It includes a firearm owned by, or in the possession of, or in the custody or control of, a person described in Welfare and Institutions Code Section 8102(a). [Penal Code Sec. 1524(a)(10)]

☐ It includes a firearm owned by, or in the possession of, or in the custody or control of, a person who is prohibited from possessing a firearm pursuant to Family Code Section 6389 and the person has failed to relinquish the firearm. [Penal Code Sec. 1524(a)(11)]

☐ It will provide tracking device information that constitutes evidence of a felony or a misdemeanor violation of either the Fish and Game Code or Public Resources Code, or will tend to show that a particular person has violated the same, or to locate a person who has violated the same. [Penal Code Sec. 1524(a)(12)]

☐ It includes a firearm or ammunition owned by, or in the possession of, or in the custody or control of, a person who is subject to a gun violence restraining order, and the person has failed to relinquish the firearm. [Penal Code Sec. 1524(a)(14)]

☐ It includes a firearm owned by, or in the possession of, or in the custody or control of, a person who is prohibited from possessing a firearm pursuant to Penal Code Sections 29800 or 29805, and the person has failed to relinquish the firearm. [Penal Code Sec. 1524(a)(15)]

☐ It includes controlled substances, or a device, contrivance, instrument, or paraphernalia used for using or administering a controlled substance. [Penal Code Sec. 1524(a)(16)]

☐ It tends to show that violation of Penal Code Section 647(j), paragraphs (1), (2), and/or (3) has occurred or is occurring. [Penal Code Sec. 1524(a)(18)]

☐ It includes data from a recording device installed by the manufacturer of a vehicle that constitutes evidence that tends to show the commission of a felony or misdemeanor involving a vehicle, resulting in death or serious bodily injury. [Penal Code Sec. 1524(a)(19)]

☐ It tends to show that a violation of Penal Code Section 647.9 has occurred or is occurring. [Penal Code Sec. 1524(a)(20)]

**YOU ARE THEREFORE COMMANDED TO SEARCH:**

The following items of property retained at the Folsom Police Department Evidence Room, located at 46 Natoma Street, Folsom, California, 95630 as follows:

(1) Evidence Item **243-1**, further described as a black SanDisk 2GB SD Card.
(2) Evidence Item **243-2**, further described as a black HP Desktop Computer (SN:MXL14418P3).
(3) Evidence Item **243-2-100**, further described as an Iomega external drive attached to item 243-2 (SN:GSAB05B9B3).
(4) Evidence Item **243-2-101**, further described as a Microsoft USB attached to item 243-2.
(5) Evidence Item **243-3**, further described as a black HP All-In-One Computer (SN:8CC23529YC).
(6) Evidence Item **243-4**, further described as a black Dell Desktop Computer (SN:HGMBX01).
(7) Evidence Item **243-5**, further described as a black HP Desktop Computer (SN:2UA3091KM7).
(8) Evidence Item **243-6**, further described as a WD MyPassport External Drive (SN:WXG1EC3HSH57)
(9) Evidence Item **243-7**, further described as a PMY 64 GB USB.

and all memory cards immediately associated/attached with the device(s) such as subscriber identification module (SIM) cards and memory cards.

**FOR THE FOLLOWING PROPERTY:**

All data constituting evidence and instrumentalities of **Eavesdropping (Penal Code Section 632(a)),** including communications referring or relating to the above-listed criminal offenses, between from the **date of inception of first data storage in the device(s) to date of warrant execution** as follows:

(1) All communications content, including email, text (short message service (SMS)/multimedia message service (MMS) or application chats), notes, or voicemail. This data will also include attachments, source and destination addresses, and time and date information, and connection logs, images and any other records that constitute evidence and instrumentalities of **Eavesdropping (Penal Code Section 632(a))**, including communications referring or relating to the above-listed criminal offenses, together with indicia of use, ownership, possession, or control of such communications or information found.

(2) All audio, video, and photographic data and associated metadata.

(3) All internet history for the dates above, including cookies, bookmarks, web history, search terms.

**(4)** All indicia of ownership and control for both the data and the digital device, such as device identification and settings data, address book/contacts, social network posts/updates/tags, Wi-Fi network tables, associated wireless devices (such as known Wi-Fi networks and Bluetooth devices), associated connected devices (such as for backup and syncing), stored passwords, user dictionaries.

**(5)** All data records associated with connections with external digital devices.

**AND TO SEIZE IT IF FOUND** and bring it forthwith before me, or this court, at the courthouse of this court.

Investigating officers are authorized, at their discretion, to conduct an offsite search of the seized items for the property described. Investigating officers and those agents acting under the direction of the investigating officers are authorized to access all data on the cellular device using electronic cellular telephone downloading equipment, programs, or devices to determine if the data contains the items as described above. If necessary, investigating officers are authorized to employ the use of outside experts, acting under the direction of the investigating officers, to access and preserve data on the cellular device. Those items that are within the scope of this warrant may be copied and retained by investigative officers. If no evidence related to the objective of this warrant is discovered relating to the seized property and associated peripherals, the system will be returned promptly.

**Additional Orders:**

**(1)** **Non-Disclosure Order**: Applicant's declaration has established grounds for a non-disclosure order pursuant to Penal Code Section 1546.2 and Title 18, United States Code, Sections 2703(b) and 2705(b). Pending further order of this court, this search warrant and the supporting affidavit are ordered sealed and shall not become a public record. This Search Warrant shall be delivered into the custody of the Clerk of the Superior Court and remain sealed in the custody of the Clerk unless further ordered by the court.
☐ Requested by affiant    ☒ Not requested by affiant

☐ Order granted
☑ Order not granted and/or not applicable

**(2)** **Seal Unrelated Information:** As required by Penal Code Section 1546.1(d)(2), any information obtained through the execution of this warrant that is unrelated to the objective of the warrant shall be sealed by the affiant and shall not be subject to further review, use, or disclosure except pursuant to a court order or to comply with discovery as required by Penal Code Sections 1054.1 and 1054.7.

**(3)** **Delay of Notification**: This matter having come before the Court pursuant to an application under Penal Code Section 1524 *et seq.*, Penal Code Section 1546 *et seq.*, and Title 18, United States Code, Section 2705, which application requests that notification of this warrant be delayed for a period of no more than 90 days. Based

upon the reading of the Search Warrant, and Affidavit in Support thereof, it appearing that there is reason to believe that the notification of the existence of the warrant to any person will result in one of the following:

☐       Endangering the life or physical safety of an individual
☐       Lead to flight from prosecution
☐       Lead to destruction of or tampering with evidence
☐       Lead to intimidation of potential witnesses
☐       Seriously jeopardize an ongoing investigation
☐       Unduly delay a trial or otherwise lead to an adverse result

**IT IS FURTHER ORDERED** that the notification by the government otherwise required under Penal Code Section 1546.2(a) be delayed for a period of **ninety (90)** days. It is also ordered that, if in the case of an apprehension of the target, or conclusion of the investigation of the target, that the target shall be notified concurrent with the target's apprehension or within three days of the conclusion of the investigation pursuant to Penal Code Section 1546.

☐ Delay of notification requested by affiant
☒ Delay of notification not requested by affiant

☐       Delay of notification orders granted
☑       Delay of notification orders not granted and/or not applicable

**(4)**   **Extension of Time for Return:** The 10-day requirement for the Return to Search Warrant is extended in order to provide ample time to download and extract data from the electronic/digital device(s). The Return to Search Warrant and Search Warrant are ordered to be filed with the court within 90 days of execution of the warrant.

☒ Requested by affiant     ☐ Not requested by affiant

☑       Order granted
☐       Order not granted and/or not applicable

**(5)**   **Sealing of Search Warrant, Affidavit, and Return:** Affiant has established good cause for a sealing order pursuant to Rule 2.550 of the California Rules of Court, and as such, this Search Warrant, the supporting Affidavit, and the Return are ordered sealed and shall not become a public record.  This Search Warrant, Affidavit, and Return shall be delivered into the custody of the Clerk of the Superior Court and remain sealed in the custody of the Clerk unless further ordered by the court.

☐ Requested by affiant     ☒ Not requested by affiant

☐       Order granted
☑       Order not granted and/or not applicable

**(6)**   ***Hobbs* Sealing of Portion of Search Warrant, Affidavit, and Return:** Affiant has established good cause for a sealing order pursuant to *People v. Hobbs* (1994) 7

Cal.4th 948 and Evidence Code Sections 1040-1042, and as such, a portion of this Search Warrant, the supporting Affidavit, and/or the Return are ordered sealed and shall not become a public record, as further stated below. This Search Warrant, Affidavit, and Return shall be delivered into the custody of the Clerk of the Superior Court and remain sealed in the custody of the Clerk as directed by the court's *Hobbs* sealing order unless further ordered by the court.

☐ Requested by affiant    ☒ Not requested by affiant

☐ Order granted
☑ Order not granted and/or not applicable

**(7)** **No Prohibited Violations**: Based on Affiant's attestation pursuant to Penal Code Sections 1524(h) and 1524.2(c), the Court finds that the evidence sought pursuant to this warrant is not related to an investigation into, or enforcement of, a prohibited violation as defined in Penal Code Section 629.51.

**Grounds for Sealing**:
☐ Official information (Evid. Code § 1040)    ☐ Informant protection (Evid. Code § 1041)
☐ Evidence destruction or tampering    ☐ Intimidation of potential witnesses

**AUTHORIZATION FOR USE OF DESTRUCTIVE MEANS TO SEARCH THE ELECTRONIC DEVICES**: It is further ordered that, at the discretion of the investigator, law enforcement officers and/or any technical support staff assisting the peace officers in the execution of this warrant may damage and/or destroy the device to the extent necessary to extract the data from the device.

This Search Warrant and incorporated Affidavit was sworn to and subscribed before me this

18 day  July, 2023, at 12:20 PM.

Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

*Sharon A Lueras*

Sharon A Lueras (Jul 18, 2023 12:20 PDT)
Signature, Sharon A Lueras
Judge of the Superior Court of California, Sacramento County

**NIGHT SEARCH APPROVED:** ☐ YES    ☐ NO

Executed by:  Joseph Howard         Date: 8/17/23      Hr. Unk    ☐ AM    ☐ PM

For further information concerning this search warrant, contact the affiant at:

**Detective Joseph Howard #251**
Folsom Police Department
46 Natoma Street, Folsom, CA 95630


Case/Report No. 23-2222

# AFFIDAVIT OF Joseph Howard
# IN SUPPORT OF A SEARCH WARRANT

I, Officer Joseph Howard #251, your affiant, have been a sworn Police Officer with the Folsom Police Department since February of 2019. Your affiant graduated from the Sacramento County Sheriff's Academy in February of 2019. The Sheriff's Academy consisted of approximately 950 hours of formalized training. During the P.O.S.T. certified Sheriff's Academy, your affiant was trained in the process of conducting criminal investigations. Following completion of the Sheriff's Academy, your affiant was assigned to the Patrol Division. While working in the Patrol Division from February of 2019 to September of 2022, your affiant conducted and assisted in numerous criminal investigations involving various crimes, including but not limited to, theft, fraud, forgery, burglary, automobile theft, domestic violence, sexual assault, illegal narcotics, and firearms. Through these investigations, your affiant has conducted interviews with victims, witnesses, and suspects. From this experience, your affiant had the opportunity to interview suspects about the manner in which they commit crimes. As a Patrol Officer, your affiant has conducted numerous investigations involving narcotics, including possession of narcotics for sale. Your affiant has conducted or assisted in no less than one hundred (100) investigations related to simple possession, possession of narcotics for sale, and possession of narcotic paraphernalia. From September 2022 to June of 2023, your affiant was a Detective assigned the Special Investigation Unit (SIU), which primarily focused on narcotics, violent crime, and fugitive apprehension. Your affiant is currently assigned to the Criminal Investigations Unit (CID) and primarily focuses on property crime. Your affiant has been assigned to this unit since June of 2023. From 2013 to 2018, your affiant was enrolled at California State University, Sacramento and obtained a Bachelor's Degree in Criminal Justice. In September of 2021, your affiant became a certified Drug Recognition Expert (D.R.E.). As a Drug Recognition Expert, your affiant is trained in the detection of the signs and symptoms associated with subjects who are under the influence of drugs and/or alcohol. Your affiant has also completed ICI Major Narcotics Investigation School in January of 2023.

## CASE SUMMARY

The information contained in this affidavit is based upon information provided by officers and witnesses to whom I have personally spoken with, and upon reports and other documents I have reviewed. Because this affidavit is being submitted for the limited purpose of reviewing electronic records, your affiant has not included each and every fact known to your affiant concerning this investigation. Your affiant has set forth only the facts that your affiant believes are necessary and appropriate to establish the appropriate foundation for a search warrant authorizing the search of electronic devices.

On 6/7/23, Officer Stokhaug responded to 1205 Souza Way in Folsom for a suspicious circumstance report. The call stated the reporting party located a possible recording device in her home and suspects that her ex-husband had left it. Officer Stokhaug contacted the reporting party identified as V-Jennifer Umberger. V-Jennifer Umberger informed Officer Stokhaug that she found a device on her side yard this morning.

V-Jennifer Umberger told Officer Stokhaug in summary that her ex-husband, identified as S-George Umberger, had known about a lot of conversations that she was having with her attorney which affected their divorce settlement. V-Jennifer Umberger stated S-George Umberger had also known about conversations she was having with her son and had regurgitated a conversation that she had with her son while they were in the garage of the residence. V-Jennifer Umberger's son suspects that the device that was located is recording them.

V-Jennifer Umberger stated the device was on when she found it and she turned it off. V-Jennifer Umberger stated that S-George Umberger has not had access to the house and believes he's been in the backyard. V-Jennifer Umberger stated that S-George Umberger was last at the residence several weeks prior to clean the pool.

V-Jennifer Umberger stated in summary that S-George Umberger knew about her current boyfriend, his name, as well as her boyfriend's ex-wife's name. V-Jennifer Umberger stated she tries to have conversations away from her kids and will go into her backyard or garage to have them.

V-Jennifer Umberger claimed that S-George Umberger knew about stuff that she had talked to her attorney about. V-Jennifer Umberger stated that when she would go to court, S-George Umberger would already know what they were going to discuss. V-Jennifer Umberger claimed that at their last court date two weeks prior, S-George Umberger knew every angle that her attorney was going after. V-Jennifer Umberger's attorney contacted her and believed that S-George Umberger had hacked into her email because of everything that he knew and requested V-Jennifer Umberger change her email address.

V-Jennifer Umberger stated that S-George Umberger has not lived at the residence since May of 2022.

Umberger, the son of V-Jennifer Umberger and S-George Umberger, was contacted by Officer Stokhaug.      Umberger showed Officer Stokhaug the conversation that he had with his father. In the text thread conversation, S-George Umberger asks      in summary as to why his mother was having      ask him where he is living.      denies this and S-George Umberger responds stating that he "heard the conversation". An image of this text message thread is below:



The text conversation continues between S-George Umberger and his sor      . S-George Umberger states via text that he heard a conversation between      and his mother in which V-Jennifer Umberger had asked      to find out where S-George Umberger was living. An image of this text message thread is below:



V-Jennifer Umberger showed Officer Stokhaug where the device was located, which was just outside the side door that leads into the garage. The door is in her backyard and behind the fence that leads to the front of the house and the front garage door. The gate has a latch, but does not lock. V-Jennifer Umberger stated the device was found on the ground next to the door, under the bush.

Officer Stokhaug took possession of the device and brought it back to the police department. Officer Stokhaug connected the device to one of the Folsom PD computers with a USB plug. Officer Stokhaug was able to see approximately 40 different recordings on the device. Officer Stokhaug booked the device **(191-1)** and the SD Card from the device **(191-2)** into Evidence.

On 6/12/23, V-Jennifer Umberger came to the Folsom Police Department and gave Officer Stokhaug a USB key with a video on it. V-Jennifer Umberger stated that she put cameras in her side yard and observed S-George Umberger in her backyard looking around in the same area where she located the recording device. V-Jennifer Umberger stated that George had wanted to come to the residence to get some pots. I, Detective Howard, later reviewed this video. The video shows S-Umberger on the ground appearing to search on the ground near the bush next to the side garage door. S-Umberger then gets up and begins looking oddly around the area for a few seconds. From watching the video, it is my opinion that S-Umberger is looking for something.

I later spoke with Officer Stokhaug via telephone and inquired about the recordings found on the device. Officer Stokhaug stated he listened to some of the recordings on the device and heard V-Jennifer Umberger's voice.

Based on the circumstances in this case, it is believed that the device found by V-Jennifer Umberger is an electronic recording device. It is further believed based on the evidence in this case, including the text messages between S-George Umberger and his son, Will, and the video showing S-Umberger appearing to be looking around in the same area where the recording device was found, that the device is associated to S-George Umberger.

On 6/21/23, I, Detective Howard, authored a search warrant for the recording device (191-1) and the micro-SD card (191-2) for this case. The warrant was signed by the Honorable Judge S. Gevercer on 6/21/23. Detective Thibeault conducted forensic downloads of the above devices using Cellebrite.

On 6/27/23, I, Detective Howard, reviewed the forensic download of the recording device through Cellebrite Physical Analyzer. In reviewing the download, I located several audio files. I listened to several of the audio files to determine if it captured any audio of V-Jennifer Umberger speaking. While listening to some of the audio files, I located several that contained audio with V-Jennifer Umberger's voice in them, that appeared to sound as if she was speaking on the phone.

In speaking with Detective Patrick Thibeault, who is assigned as an investigator at the Sacramento Hi-Tech Crimes Task Force, and who has experience in conducting electronic downloads of digital devices, such as computers/laptops/PC's, he informed me that digital

devices can contain data records of connections with external devices, such as the recording device in this case. The data can be obtained through a forensic download and can show which external devices may have connected with a digital device. Data from S-Umberger's digital devices can also show software install directions for the recording device. If S-Umberger had completed the software install directions for the recording device, data could be located showing this installation on S-Umberger's digital devices. By obtaining this data from S-Umberger's digital devices, it can further show the relationship between S-George Umberger and the recording device, and show that S-Umberger had previously had dominion and control over the recording device.

On 6/29/23, Officer E. Vavak and Officer L. Vo responded to 9268 Greenback Lane in Orangevale (Orangevale Jewelry and Loan). According to V-Jennifer Umberger, S-George Umberger is the owner of the pawn shop located at this address. Officer Vavak and Officer Vo served S-George Umberger with a Domestic Violence Restraining Order (DVRO). In speaking with S-George Umberger, he tells Officer Vavak and Officer Vo that he is the sole owner of the pawn shop.

In speaking with V-Jennifer Umberger, she advised me that S-George Umberger lives at 1780 Creekside Drive, Apartment #1125. V-Umberger stated the DVRO that she obtained against S-George Umberger has 1780 Creekside Drive, Apartment #1125 listed as S-George Umberger's address. On 7/3/23, I conducted surveillance outside building #11 at 1780 Creekside Drive. At approximately 1400 hours, I observed S-George Umberger driving his Toyota Sequoia (CA           at the apartment complex. S-Umberger parked the Toyota Sequoia near building #11. I observed S-George Umberger exit his vehicle and walk up a flight of stairs to the second floor of the apartment building. I observed S-George Umberger walk toward the door of apartment #1125, where I then lost sight of him. Based on this observation, I came to the conclusion that S-George Umberger had entered into apartment #1125 at 1780 Creekside Drive.

On 7/11/23, I authored a search warrant for S-Umberger's residence (1780 Creekside Drive, Apt. 1125) and business (Orangevale Jewelry and Loan) to seize all computer systems. The search warrant was signed by the Honorable Judge Jane Ure on 7/11/23.

On 7/13/23, with the assistance of the Folsom PD SWAT team, Detectives served the search warrant at both S-Umberger's residence and business. No items were seized at S-Umberger's residence. Several computer systems were seized from S-Umberger's business. The following is a list of those seized items:

(1) Evidence Item **243-1**, further described as a black SanDisk 2GB SD Card.
(2) Evidence Item **243-2**, further described as a black HP Desktop Computer (SN:MXL14418P3).
(3) Evidence Item **243-2-100**, further described as an Iomega external drive attached to item 243-2 (SN:GSAB05B9B3).
(4) Evidence Item **243-2-101**, further described as a Microsoft USB attached to item 243-2.
(5) Evidence Item **243-3**, further described as a black HP All-In-One Computer (SN:8CC23529YC).

**(6)** Evidence Item **243-4**, further described as a black Dell Desktop Computer (SN:HGMBX01).

**(7)** Evidence Item **243-5**, further described as a black HP Desktop Computer (SN:2UA3091KM7).

**(8)** Evidence Item **243-6**, further described as a WD MyPassport External Drive (SN:WXG1EC3HSH57)

**(9)** Evidence Item **243-7**, further described as a PMY 64 GB USB.

As described above this application seeks permission to search and seize records that might be found on the described electronic communications device, in whatever form they are found.

The intention of the search warrant is to gather evidence of the above listed offense by **George Umberger**. Based on the information in this affidavit, as well as my training and experience, as well as the training and experience of other experienced investigators with whom I have spoken, I believe that there is a high probability that there will be evidence connected to the above-described criminal offense(s) stored in the above-described digital devices.  I believe a search of these digital devices will produce reliable evidence of the above-described criminal offenses.

Based upon the information contained in this affidavit and the knowledge I have gained through experience, I believe that **Umberger** has committed a violation of the above listed felony offense.  I believe that the evidence sought and described elsewhere in this search warrant application will tend to prove **Umberger's** involvement in these crimes.

I believe forensic examination of this device will further substantiate **Umberger's** involvement in the above-listed felony offense.  As described above, this application seeks permission to search and seize records that might be found on the described electronic device(s), in whatever form they are found, including but not limited to voice data, written data, photographic data, and video data.

I am seeking evidence of ownership, use, and identification.  I know that ownership and control of a digital device can be placed at issue through a simple denial: "That is not my phone."  In my training and experience, some of the best ways to establish control are by searching the calendar, contacts, photo gallery, communications, settings, and social networking activity.  The calendar often contains appointments specific to an individual such as birthdays and doctor's appointments.  Contacts often contain friends and associates specific to an individual such as mother, father, siblings, and/or romantic/sexual partners.  A photo gallery often contains self-taken photographs (commonly known as "selfies") that clearly depict the owner/holder of the digital device.  Communications via text messages, emails, and voicemails often identify the sender/recipient by name, additionally the context of the communications often identify the sender and/or recipient.  Settings often contain usernames, addresses, and phone numbers, Wi-Fi network tables, associated wireless devices (such as known Wi-Fi networks and Bluetooth devices), associated connected devices (such as for backup and syncing), stored passwords, and user dictionaries that can identify the owner/user of the device.

Based on my training and experience the data related to the use of an electronic device is similar to a "fingerprint" in that the entire context and content of all the data tend to identify the user or users. This may tend to establish **further evidence of ownership of digital device(s) listed in this warrant and will provide evidence of Umberger's involvement in the above-described offenses.**

I am seeking specific evidence related to this case.  In addition to the previous information, I believe the cookies, bookmarks, web history, search terms and internet search history on the digital devices may contain relevant evidence of ownership of the **digital device(s) as well as evidence of Umberger's involvement in the above-described criminal offense**.  For example, information and records produced pursuant to this warrant may provide relevant insight into the digital device's owner's state of mind as it relates to the offense(s) under investigation. Similarly, information contained within the digital device(s) may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

Based on my knowledge, training, and experience, I know that digital files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive or other storage device, deleted or viewed via the Internet. Digital files downloaded to a storage device can be stored for years and remains on the storage device until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage device that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, device's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are typically automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

Based upon my knowledge, training and experience, I know that searching for information stored in digital devices often requires that the device be accessed and searched using specialized programs or tools by a qualified expert in a controlled environment. This is often necessary to ensure the accuracy and completeness of such data, and to prevent the loss of the data either from accidental or intentional destruction. Data search processes are designed to recover even "hidden," erased, compressed, password protected, or encrypted files. Because digital evidence is vulnerable to inadvertent or intentional modification or destruction, both from external sources and from destructive code imbedded in the system as a "booby trap," a controlled environment may be necessary to complete an accurate analysis.  In light of these concerns, I hereby request the Court's permission to conduct an off-site search of the hardware for the evidence described and to employ the use of outside experts who will use whatever data analysis techniques appear necessary to locate and retrieve such evidence.

I also know from experience that locked digital devices are sometimes locked by using a code or combination known only to the user. Sometimes, investigators are not able to access the digital device because of this type of lock due to the design of the device and its software. In the event

that a digital device seized pursuant to this warrant is locked in such a manner and otherwise not accessible, it may be necessary for investigators to gain access to this device using a destructive technique commonly referred to as the "chip-off method", where the memory chip is physically removed from the device's circuit board. In the event all other methods available to the examiner fail, I believe it is necessary for investigators to be able to use destructive means to search seized devices.

It is my experience, and the experience of other detectives with whom I have spoken, that digital/electronic device examinations, and/or computer examinations may not be completed within the ten days in which the Search Warrant must be served and the Return to Search Warrant filed.  This is because it is common for the **Folsom Police Department**, which will conduct the examination, to have several cases working at the same time and an examination may take several weeks to complete.  Additionally, I know from my training and experience, that it may take a lengthy period of time for computer software to unlock an electronic device that has been secured using a passcode, password, or other form of electronic security feature. I therefore request that the search of the cell phone be allowed to continue, if necessary, up to 90 days beyond the ten-day period set forth in Penal Code Section 1534.

### JUSTIFICATION TO NOT SPECIFY TIME PERIOD FOR DATA SEARCH

Pursuant to Penal Code Section 1546.1(d)(1), your affiant requests to conduct a search of the above-listed cellular telephone(s)/digital device(s) without a specified time period, due to the nature of the device to be searched.

Based on my knowledge, training, and experience, I know that when searching third-party records, a date range will be relevant in establishing responsive records. **However, when searching an electronic device, a date range has less relevance, and there are specific types of valuable evidence that do not have an associated date.** The "date" associated with an electronic file is dependent on the device's internal clock.  That clock can be manipulated by the device owner, and may have little relation to the actual time that a file was created or accessed. Also, many programs such as virus scanners will access files automatically and change associated "access dates" without input by the device owner.  Perhaps more significantly, it is very common for suspects to attempt to destroy electronic evidence by deleting incriminating files.  Once files are deleted, the files or fragments of those files remain in the device's memory. Deleted files and fragments can be recovered by trained forensic technicians and have proven to be valuable evidence in a variety of cases.

As a result, to ensure that forensic investigators are able to locate all relevant evidence, as authorized by this warrant, it is necessary to search the entirety of the device, without regard for a specified date range.  I know from my training and experience, as well as from talking with experienced digital forensic examiners, that searching a device with a limited date range will lead to relevant files not being located within the device.

Additionally, in order to limit the privacy intrusion into unrelated data that may be captured by a search without a specified date range, any data obtained that is reviewed and determined not

to be relevant to the objective of this warrant will be sealed pursuant to Penal Code Section 1546.1(d)(2).

In this case, your affiant seeks to search the following cellular telephone(s)/digital device(s):

**(1)** Evidence Item **243-1**, further described as a black SanDisk 2GB SD Card.
**(2)** Evidence Item **243-2**, further described as a black HP Desktop Computer (SN:MXL14418P3).
**(3)** Evidence Item **243-2-100**, further described as an Iomega external drive attached to item 243-2 (SN:GSAB05B9B3).
**(4)** Evidence Item **243-2-101**, further described as a Microsoft USB attached to item 243-2.
**(5)** Evidence Item **243-3**, further described as a black HP All-In-One Computer (SN:8CC23529YC).
**(6)** Evidence Item **243-4**, further described as a black Dell Desktop Computer (SN:HGMBX01).
**(7)** Evidence Item **243-5**, further described as a black HP Desktop Computer (SN:2UA3091KM7).
**(8)** Evidence Item **243-6**, further described as a WD MyPassport External Drive (SN:WXG1EC3HSH57)
**(9)** Evidence Item **243-7**, further described as a PMY 64 GB USB.

I know from my training and experience, as well as that of experienced digital forensic examiners with whom I have spoken, that these particular types of devices will have potentially relevant data that may not be captured if a search if limited by a specified date range.

Therefore, because date information within a digital device can be altered, changed, and/or manipulated, by this warrant I am seeking permission to search and use in this investigation all the metadata, file data, setting data, photographic and video data, and communication data on the digital device(s) since the **date of inception of first data storage in the device(s) to the date of warrant execution**.

**AFFIANT'S ATTESTATION OF NO PROHIBITED VIOLATIONS**

Pursuant to Penal Code Sections 1524(h) and 1524.2(c), your affiant attests and declares, based on my training and experience, the facts and circumstances of the investigation, as explained above, as well as based upon my position as an investigating officer in this investigation that the evidence sought by this warrant is not related to an investigation into, or enforcement of, a prohibited violation, as defined by Penal Code Section 629.51.